# UNITED STATES DISTRICT COURT
### DISTRICT OF DELAWARE

| | |
|---|---|
| CITRIX SYSTEMS, INC., | |
| Plaintiff, | Civil Action No. _____ |
| v. | JURY TRIAL DEMANDED |
| AVI NETWORKS, INC., | |
| Defendant. | |

## COMPLAINT

1.     Plaintiff Citrix Systems, Inc. ("Citrix") files this Complaint against Avi Networks, Inc. ("Avi Networks") and alleges as follows:

## NATURE OF ACTION

2.     This is a civil action arising out of Avi Networks' patent infringement in violation of the Patent Laws of the United States, 35 U.S.C. §§ 271 and 281–285, as well as Avi Networks' false and misleading advertising and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125; the Delaware Deceptive Trade Practices Act, 6 Del. C. § 2532; and the common law.

## BACKGROUND

3.     Founded in 1989, Citrix is an industry leader in the field of cloud technology. Citrix's technology enables the future of work by delivering the industry's most comprehensive and integrated platform for secure app and data delivery and network functionality as a cloud-based service through technology leadership in application virtualization, virtual desktop infrastructure (VDI), mobility, networking, and cloud. Citrix's products and services target customers of all sizes, from small businesses to large global enterprises.

1

4.      Citrix's delivery networking products allow organizations to deliver apps and data with the security, reliability, and speed trusted by thousands of customers worldwide. For example, NetScaler ADC is an application delivery controller (ADC) and load balancer designed to improve application performance and reliability for mobile, remote, and branch users; allow customers to transition their infrastructure to an app-driven, software-defined network; eliminate multiple remote access solutions for improved security; and consolidate data centers for greater efficiency.

5.      In the late 1990s, NetScaler, Inc. began developing a technology ("the NetScaler technology") which included techniques to efficiently pool, multiplex, and reuse network connections between clients and servers over the Internet. Such pooling, multiplexing, and reuse improves the processing capacity of the servers. This improvement translates into faster responses to client requests, e.g., faster downloads, and more client requests being handled by the same server hardware. Citrix acquired NetScaler, Inc. in August 2005, and the NetScaler technology has been part of the Citrix portfolio of products since that time.

6.      In 2006, Citrix developed additional NetScaler technology to monitor the health of servers by using dynamic response time to determine responsiveness of network services, specifically by determining whether a deviation of response time falls within a predetermined threshold. This technology improves the accuracy of an identification of a service as unavailable and increases the functionality of a monitor identifying unavailable services.

7.      Citrix's efforts in developing the NetScaler technology have resulted in the issuance of numerous United States patents, including U.S. Patent No. 9,148,493; U.S. Patent No. 8,631,120; U.S. Patent No. 8,230,055; and U.S. Patent No. 7,720,954 (collectively referred to as the "Patents-in-Suit"). Copies of these patents are attached as Exhibits 1, 2, 3, and 4. These four

patents are only a small slice of Citrix's intellectual property portfolio, which includes over 1100 issued patents in the United States and over 2300 issued patents worldwide.

8.     The broad adoption of Citrix's networking technology, including the NetScaler technology, in the United States and worldwide, and Citrix's investment in that technology, has resulted in substantial growth for Citrix. Networking revenue grew over 390% from 2007 to 2016 leading to 2016 networking revenue of approximately $783 million. Citrix's success has not gone unnoticed by its competitors.

9.     Founded in 2012, Avi Networks is a competitor of Citrix that is relatively new to the cloud technology industry. Since its founding, Avi Networks has recruited Citrix employees, including senior Citrix executives, to work at Avi Networks. For example, Avi Networks' current CEO, Amit Pandey, previously worked at Citrix as the Vice President and General Manager of Mobile Solutions following Citrix's acquisition of Zenprise, Inc. in January 2013. Mr. Pandey had been the CEO of Zenprise, Inc. when it was acquired by Citrix. Mr. Pandey left Citrix in May 2014 and became the CEO of Avi Networks in September 2015. Further, Avi Networks' Vice President of Marketing, Chandra Sekar, also worked at Citrix as Senior Director – Product Marketing after Citrix's acquisition of Zenprise, Inc. In July 2014, Mr. Sekar left Citrix and in October 2015 joined Avi Networks. Both Mr. Pandey and Mr. Sekar had executive roles at Citrix, and thus were well aware of Citrix's technology and extensive patent portfolio. Moreover, since Avi Networks was formed, several other Citrix employees have left to join that company, bringing with them their knowledge of Citrix's products and intellectual property.

10.     Avi Networks markets a technology that it refers to as the "Avi Vantage Platform." More specifically, the Avi Vantage Platform is a software-defined application delivery controller (ADC) that can be deployed in a public cloud as well as on a customer's on-premises equipment.

11.     Avi Networks is promoting the Avi Vantage Platform by intentionally making numerous false and misleading claims about Citrix's NetScaler technology on Avi Networks' website, which is accessible by consumers nationwide including in Delaware.

12.     On information and belief, Avi Networks is intentionally making false and misleading claims about Citrix's NetScaler technology in an attempt to legitimize itself with inaccurate comparisons to Citrix's well-developed and protected technology, and to compensate for the fact that it is relatively new to the market and is trying to unfairly capture market share from Citrix.

13.     In particular, Avi Networks' website contains a chart that purports to compare the features of the Avi Vantage Platform with its competitors' technologies, including Citrix's NetScaler technology.   *See*   https://avinetworks.com/compare-f5-load-balancer-and-citrix-netscaler-with-avi-networks/, attached as Exhibit 5.

14.     The "comparison chart" is replete with numerous false and misleading claims about the NetScaler technology, including the false and misleading claims described below.

15.     Under "Layer 7 Switching" in the comparison chart, Avi Networks states that the NetScaler technology does not provide a script language. *See id.*, p. 1. This claim is literally false because the NetScaler technology does provide a script language for layer 7 switching.

16.     Under "SSL" in the comparison chart, Avi Networks states that the NetScaler technology does not provide an SSL configuration diagnostic or support elliptic curve SSL certificates ("certs"). *See id.* These claims are literally false because the NetScaler technology does provide SSL configuration diagnostics and does support elliptic curve SSL certificates.

17.     Under "Health Monitor" in the comparison chart, Avi Networks states that the NetScaler technology does not provide an LDAP (Lightweight Directory Access Protocol) health

monitor and does not provide scripting support for a health monitor. *See id.*, p. 2. These claims are literally false because the NetScaler technology does provide an LDAP health monitor and does provide scripting support for a health monitor.

18.     Under "Analytics and Visibility" in the comparison chart, Avi Networks states that the NetScaler technology does not provide scoring for VIP health, scoring for a server's health, end-to-end timing from client to servers, or intelligent packet capture. *See id.*, p. 2. These claims are literally false because the NetScaler technology does provide scoring for VIP health, scoring for a server's health, end-to-end timing from client to servers, and intelligent packet capture.

19.     Under "APIs" in the comparison chart, Avi Networks states that the NetScaler technology does not provide native REST APIs, macro REST APIs, or a centralized API endpoint. *See id.*, p. 2. These claims are literally false because the NetScaler technology does provide native REST APIs, macro REST APIs, and a centralized API endpoint.

20.     Avi Networks also promotes the Avi Vantage Platform as a replacement for Citrix's NetScaler technology by stating that appliance-based load balancers such as NetScaler "fall short of application services capabilities beyond load balancing, such as application analytics, predictive autoscaling, app maps, and micro-segmentation." *See* https://avinetworks.com/load-balancer-refresh-f5-load-balancer-citrix-netscaler/, attached as Exhibit 6. This too is untrue.

21.     Avi Networks' attempts to compete unfairly with Citrix are not limited to its intentionally false and misleading statements about Citrix's products. Avi Networks has also infringed on Citrix's valuable and proprietary intellectual property, including at least the Patents-in-Suit.

22.     Avi Networks is using Citrix's patented technology without a license or Citrix's permission.

23.     In particular, Avi Networks manufactures and sells products and services, including past and current versions, including without limitation those marketed as the "Avi Vantage Platform", that infringe Citrix's patented technology (collectively, the "Infringing Products"). The Avi Vantage Platform includes, without limitation, a variety of components such as Avi Controller, Avi Service Engines, and Avi Console.

24.     Citrix brings this action to stop Avi Networks' improper conduct, to recover damages for that conduct (including Avi Networks' wrongful use of its patented technology in the Infringing Products) and to stop Avi Networks from further deceptive statements and marketing and selling the Infringing Products without a license.

## THE PARTIES

25.     Plaintiff Citrix Systems, Inc. is a corporation organized and existing under the laws of Delaware, having a principal place of business at 851 West Cypress Creek Road, Fort Lauderdale, Florida 33309.

26.     On information and belief, Defendant Avi Networks, Inc. is a corporation organized and existing under the laws of Delaware, having a principal place of business at 5155 Old Ironsides Dr., Suite 100, Santa Clara, California 95054.

27.     On information and belief, Avi Networks, Inc. may be served through its registered agent for service, The Corporation Trust Company located at Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

## JURISDICTION AND VENUE

28.     This Court has subject matter jurisdiction over Citrix's patent infringement claim pursuant to 28 U.S.C. §§ 1331 and 1338(a). This court has subject matter jurisdiction over Citrix's federal false advertising and unfair competition claims pursuant to 28 U.S.C. § 1331. This Court

has supplemental jurisdiction over the non-federal unfair competition claims under 28 U.S.C. § 1367(a).

29.     Personal jurisdiction exists over Avi Networks at least because it is incorporated in this District.

30.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1400(b) at least because Avi Networks resides in this District.

## CITRIX'S PATENTS-IN-SUIT

31.     On information and belief, Avi Network's Infringing Products infringe at least the following patents, which Citrix has asserted in this lawsuit: U.S. Patent No. 9,148,493; U.S. Patent No. 8,631,120; U.S. Patent No. 8,230,055; and U.S. Patent No. 7,720,954.

32.     On September 29, 2015, the United States Patent and Trademark Office duly and lawfully issued U.S. Patent No. 9,148,493 ("the '493 patent"), entitled "Apparatus, method and computer program product for efficiently pooling connections between clients and servers."

33.     The '493 patent was duly assigned to Citrix, which is the assignee of all right, title, and interest in and to the '493 patent and possesses the exclusive right of recovery for past, present, and future infringement. Each and every claim of the '493 patent is valid and enforceable. A true and correct copy of the '493 patent is attached hereto as Exhibit 1.

34.     On January 14, 2014, the United States Patent and Trademark Office duly and lawfully issued U.S. Patent No. 8,631,120 ("the '120 patent"), entitled "Apparatus, method and computer program product for efficiently pooling connections between clients and servers."

35.     The '120 patent was duly assigned to Citrix, which is the assignee of all right, title, and interest in and to the '120 patent and possesses the exclusive right of recovery for past, present, and future infringement. Each and every claim of the '120 patent is valid and enforceable. A true and correct copy of the '120 patent is attached hereto as Exhibit 2.

36.     On July 24, 2012, the United States Patent and Trademark Office duly and lawfully issued U.S. Patent No. 8,230,055 ("the '055 patent"), entitled "Method and appliance for using a dynamic response time to determine responsiveness of network services."

37.     The '055 patent was duly assigned to Citrix, which is the assignee of all right, title, and interest in and to the '055 patent and possesses the exclusive right of recovery for past, present, and future infringement. Each and every claim of the '055 patent is valid and enforceable. A true and correct copy of the '055 patent is attached hereto as Exhibit 3.

38.     On May 18, 2010, the United States Patent and Trademark Office duly and lawfully issued U.S. Patent No. 7,720,954 ("the '954 patent"), entitled "Method and appliance for using a dynamic response time to determine responsiveness of network services."

39.     The '954 patent was duly assigned to Citrix, which is the assignee of all right, title, and interest in and to the '954 patent and possesses the exclusive right of recovery for past, present, and future infringement. Each and every claim of the '954 patent is valid and enforceable. A true and correct copy of the '954 patent is attached hereto as Exhibit 4.

## COUNT ONE: INFRINGEMENT OF
## U.S. PATENT NO. 9,148,493

40.     Citrix re-alleges and incorporates by reference Paragraphs 1–39 above, as if fully set forth herein.

41.     The '493 patent claims a particular method of connection multiplexing and reuse that permits more efficient pooling of connections between clients and servers over the Internet.

42.     Avi Networks uses Citrix's patented features of the '493 patent in its Infringing Products in violation of Citrix's patent rights.

43.     For example, the Infringing Products support connection multiplexing and reuse. As seen in the following excerpt from Avi Networks' documentation for the Avi Vantage Platform,

the Infringing Products support multiplexing and reuse: "Connection multiplexing, configured via the Templates > Profiles > HTTP application profile, controls the behavior of HTTP 1.0 and 1.1 request switching and server TCP connection reuse." *See* https://avinetworks.com/docs/17.2/connection-multiplex/, attached as Exhibit 7. This connection multiplexing and reuse is further illustrated by the following figure from Avi Networks' documentation where a service engine (SE) of the Avi Vantage Platform (see middle of the figure) receives requests (numbered 1, 2, and 3) via respective connections from one or more clients (left-side of the figure), where the requests are eligible for load balancing across any server (see right-side of figure). *See id*.



44.    In violation of 35 U.S.C. § 271, Avi Networks has infringed, contributed to the infringement of, and/or induced others to infringe the '493 patent by, among other things, making, using, offering to sell, selling, and/or importing into the United States unlicensed systems, products, and/or services in a manner that infringes one or more of at least independent claims 1 and 9 of the '493 patent. Such unlicensed systems, products, and/or services include, by way of example and without limitation, the Avi Vantage Platform. In addition, on information and belief, customers of Avi Networks directly infringe the '493 patent by putting the Infringing Products into service by, for example, installing the Avi Vantage Platform on cloud infrastructure such as a customer's private cloud infrastructure or public cloud infrastructure.

45.    For example, Avi Networks has directly infringed the '493 patent by making, using, offering to sell, selling, and/or importing the Avi Vantage Platform in violation of 35 U.S.C. §

271(a), either literally or under the doctrine of equivalents. On information and belief, the Avi Vantage Platform infringes each and every claim element of one or more of at least independent claims 1 and 9 of the '493 patent. A chart illustrating this infringement is attached as Exhibit 8.

46.     More specifically, Avi Networks offers the Avi Vantage Platform for download via its website to customers. *See*, for example, https://avinetworks.com/download/, attached as Exhibit 9. Moreover, Avi Networks offers and sells licenses that enable its customers to activate and use the Avi Vantage Platform. *See*, for example, https://avinetworks.com/docs/latest/terms-of-avi-vantage-license/, attached as Exhibit 10. Further, Avi Networks uses the Avi Vantage Platform itself for development, testing, and/or demonstration purposes.

47.     On information and belief, Avi Networks takes steps to actively induce infringement by others of one or more of at least independent claims 1 and 9 of the '493 patent in violation of 35 U.S.C. § 271(b), including customers that purchase the Infringing Products, either literally or under the doctrine of equivalents. Such active steps include, but are not limited to encouraging, advertising (including by websites such as https://avinetworks.com), promoting, and instructing others to use and/or how to use the TCP connection multiplexing and reuse capabilities of its Infringing Products. *See* Exhibit 8.

48.     On information and belief, Avi Networks knows or should know that such activities induce others to directly infringe one or more of at least independent claims 1 and 9 of the '493 patent. For example, Avi Networks knows or should know that its actions induce others to directly infringe the '493 patent because Avi Networks knows or should know about the existence of the '493 patent, especially given the fact that one or more of Avi Networks' senior leaders, including CEO Pandey, are or should be aware of Citrix's extensive patent portfolio due to their previous Citrix employment.

49.     On information and belief, Avi Networks contributes to the infringement of at least independent claims 1 and 9 of the '493 patent by others, including its customers, distributors, and/or authorized resellers in violation of 35 U.S.C. § 271(c), either literally or under the doctrine of equivalents. Acts by Avi Networks that contribute to the infringement of others include, but are not limited to, the sale and offer for sale by Avi Networks of the Avi Vantage Platform software. The Avi Vantage Platform software is especially made for or adapted for use to infringe the '493 patent, and is not a staple article of commerce and is not suitable for substantial non-infringing use. By way of example, the TCP connection multiplexing and reuse capabilities of the Avi Vantage Platform software are all evidence that the Avi Vantage Platform software was especially made or adapted to infringe the '493 patent. The Avi Vantage Platform software is not suitable for use as a standalone product because, for example, it cannot function without other software and hardware components. The Avi Vantage Platform software cannot be used but to infringe the '493 patent.

50.     As such, Avi Networks knows or should know about the existence of the '493 patent and performs acts that it knows, or should know, induce, and/or contribute to the direct infringement of at least independent claims 1 and 9 of the '493 patent by others.

51.     Avi Networks has engaged in egregious behavior infringing the '493 patent, which has been duly issued by the United States Patent and Trademark Office, and is presumed valid. On information and belief, Avi Networks has known or should have known that its actions constituted and continue to constitute infringement of the '493 patent and that the '493 patent is valid no later than by the date Avi Networks was served with or otherwise notified of this Complaint. Avi Networks could not reasonably, subjectively believe that its actions do not constitute infringement of the '493 patent, nor could it reasonably, subjectively believe that the patent is invalid. Despite

that knowledge and subjective belief, and the objectively high likelihood that its actions constitute infringement, Avi Networks has continued its infringing activities. As such, Avi Networks willfully infringes the '493 patent.

52.     By its actions, Avi Networks has injured Citrix and is liable to Citrix for infringement of the '493 patent pursuant to 35 U.S.C. § 271.

53.     By its actions, Avi Networks' infringement of the '493 patent has irreparably injured Citrix. Unless such infringing acts are enjoined by this Court, Citrix will continue to suffer additional irreparable injury. Citrix has no adequate remedy at law.

54.     By its actions, Avi Networks' infringement of the '493 patent has damaged, and continues to damage, Citrix in an amount yet to be determined, of at least a reasonable royalty and/or lost profits that Citrix would have made but for Avi Networks' infringing acts.

## COUNT TWO: INFRINGEMENT OF
## U.S. PATENT NO. 8,631,120

55.     Citrix re-alleges and incorporates by reference Paragraphs 1–39 above, as if fully set forth herein.

56.     The '120 patent claims a particular method of network connection multiplexing and reuse that permits more efficient pooling of connections between clients and servers over the Internet.

57.     Avi Networks uses Citrix's patented features of the '120 patent in its Infringing Products in violation of Citrix's patent rights. For example, the Infringing Products support connection multiplexing and reuse. As seen in the following excerpt from Avi Networks' documentation for the Avi Vantage Platform, the Infringing Products support multiplexing and reuse: "Connection multiplexing, configured via the Templates > Profiles > HTTP application profile, controls the behavior of HTTP 1.0 and 1.1 request switching and server TCP connection

reuse." *See* Exhibit 7. This connection multiplexing and reuse is further illustrated by the following figure from Avi Networks' documentation where a service engine (SE) of the Avi Vantage Platform (see middle of the figure) receives requests (numbered 1, 2, and 3) via respective connections from one or more clients (left-side of the figure), where the requests are eligible for load balancing across any server (see right-side of figure). *See id*.



58.     In violation of 35 U.S.C. § 271, Avi Networks has infringed, contributed to the infringement of, and/or induced others to infringe the '120 patent by, among other things, making, using, offering to sell, selling, and/or importing into the United States unlicensed systems, products, and/or services in a manner that infringes one or more of at least independent claims 1 and 16 of the '120 patent. Such unlicensed systems, products, and/or services include, by way of example and without limitation, the Avi Vantage Platform. In addition, on information and belief, customers of Avi Networks directly infringe the '120 patent by putting the Infringing Products into service by, for example, installing the Avi Vantage Platform on cloud infrastructure such as a customer's private cloud infrastructure or public cloud infrastructure.

59.     For example, Avi Networks has directly infringed the '120 patent by making, using, offering to sell, and selling the Avi Vantage Platform in violation of 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents. On information and belief, the Avi Vantage Platform infringes each and every claim element of one or more of at least independent claims 1 and 16 of the '120 patent. A chart illustrating this infringement is attached as Exhibit 11.

60.     More specifically, Avi Networks offers its Avi Vantage Platform for download via its website to customers. *See*, for example, https://avinetworks.com/download/, attached as Exhibit 9. Moreover, Avi Networks offers and sells licenses that enable its customers to activate and use the Avi Vantage Platform. *See*, for example, Exhibit 10. Further, Avi Networks uses the Avi Vantage Platform itself for development, testing, and/or demonstration purposes.

61.     On information and belief, Avi Networks takes active steps to induce infringement by others of one or more of at least independent claims 1 and 16 of the '120 patent in violation of 35 U.S.C. § 271(b), including customers that purchase the Infringing Products, either literally or under the doctrine of equivalents. Such active steps include, but are not limited to encouraging, advertising (including by internet websites such as www.avinetworks.com), promoting, and instructing others to use and/or how to use the TCP connection multiplexing and reuse capabilities of its Infringing Products. *See* Exhibit 11.

62.     On information and belief, Avi Networks knows or should know that such activities induce others to directly infringe one or more of at least independent claims 1 and 16 of the '120 patent. For example, Avi Networks knows or should know that its actions induce others to directly infringe the '120 patent because Avi Networks knows or should know about the existence of the '120 patent, especially given the fact that one or more of Avi Networks' senior leaders, including CEO Pandey, are or should be aware of Citrix's extensive patent portfolio due to their previous Citrix employment.

63.     On information and belief, Avi Networks contributes to the infringement of at least independent claims 1 and 16 of the '120 patent by others, including its customers, distributors, and/or authorized resellers in violation of 35 U.S.C. § 271(c), either literally or under the doctrine of equivalents. Acts by Avi Networks that contribute to the infringement of others include, but are

not limited to, the sale and offer for sale by Avi Networks of the Avi Vantage Platform software. The Avi Vantage Platform software is especially made for or adapted for use to infringe the '120 patent, and is not a staple article of commerce and is not suitable for substantial non-infringing use. By way of example, the TCP connection multiplexing and reuse capabilities of the Avi Vantage Platform software are all evidence that the Avi Vantage Platform software was especially made or adapted to infringe the '120 patent. The Avi Vantage Platform software is not suitable for use as a standalone product because, for example, it cannot function without other software and hardware components. The Avi Vantage Platform software cannot be used but to infringe the '120 patent.

64.     As such, Avi Networks knows or should know of the '120 patent and performs acts that it knows, or should know, induce, and/or contribute to the direct infringement of at least independent claims 1 and 16 of the '120 patent by others.

65.     Avi Networks has engaged in egregious behavior infringing the '120 patent, which has been duly issued by the United States Patent and Trademark Office, and is presumed valid. On information and belief, Avi Networks has known or should have known that its actions constituted and continue to constitute infringement of the '120 patent and that the '120 patent is valid no later than by the date Avi Networks was served with or otherwise notified of this Complaint. Avi Networks could not reasonably, subjectively believe that its actions do not constitute infringement of the '120 patent, nor could it reasonably, subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that its actions constitute infringement, Avi Networks has continued its infringing activities. As such, Avi Networks willfully infringes the '120 patent.

66.     By its actions, Avi Networks has injured Citrix and is liable to Citrix for infringement of the '120 patent pursuant to 35 U.S.C. § 271.

67.     By its actions, Avi Networks' infringement of the '120 patent has irreparably injured Citrix. Unless such infringing acts are enjoined by this Court, Citrix will continue to suffer additional irreparable injury. Citrix has no adequate remedy at law.

68.     By its actions, Avi Networks' infringement of the '120 patent has damaged, and continues to damage, Citrix in an amount yet to be determined, of at least at least a reasonable royalty and/or lost profits that Citrix would have made but for Avi Networks' infringing acts.

**COUNT THREE: INFRINGEMENT OF**
**U.S. PATENT NO. 8,230,055**

69.     Citrix re-alleges and incorporates by reference Paragraphs 1–39 above, as if fully set forth herein.

70.     The '055 patent covers a method of using a dynamic response time to determine responsiveness of network services, specifically by determining whether a deviation of response time falls within a predetermined threshold.

71.     Avi Networks uses Citrix's patented features of the '055 patent in its Infringing Products in violation of Citrix's patent rights. For example, the Infringing Products use dynamic response time to determine responsiveness of network service. As seen in the following excerpt from Avi Networks' documentation for the Avi Vantage Platform, the Infringing Products determine response times: "End-to-End Timing: Avi measures client and server network latency, application response time, and data transfer time for every transaction. This powerful visualization tool helps benchmark user interactions with applications, flags deviations, and quickly identifies bottlenecks." *See* Exhibit 12, p. 3. Further, the Avi Vantage Platform computes several metrics that gauge response time such as the "l7_client.avg_application_response_time" metric that

measures     an     average     server/application     response     latency     and     the

"l7_server.avg_application_response_time" metric that measures the average response latency

measured of pool servers. *See* https://avinetworks.com/docs/17.2/metrics-list/, attached as Exhibit

13.

      72.    Further, as seen in the following excerpt from Avi Networks' documentation for

the Avi Vantage Platform, the Infringing Products further determine whether a deviation of

response time falls within a predetermined threshold:

Inline Analytics processing subsystems provide comprehensive analytics dashboards about applications, end users and the infrastructure:

- App Analytics with comprehensive end-to-end timing and customizable dashboard with key metrics time series for every virtual service
- A single App Health Score with drilldown, encompassing current and past application performance, infrastructure utilization and anomalous behavior
- Log Analytics providing real-time search capability for application transactions with dimensional analytics for over 20 dimensions such as geo, OS, browser, etc.
- Client Insights providing dimensional analytics on Real User Metrics (W3C Navigation timing and Resource timing) such as page load time, DNS query, connection establishment, data transfer, etc.
- Anomaly detection for significant deviation from auto learned baselines and auto correlation of events, configuration changes and anomalies across space and time

*See* Exhibit 14, p. 6.

      73.    In violation of 35 U.S.C. § 271, Avi Networks has infringed, contributed to the

infringement of, and/or induced others to infringe the '055 patent by, among other things, making,

using, offering to sell, selling, and/or importing into the United States unlicensed systems,

products, and/or services in a manner that infringes one or more of at least independent claims 1

and 11 of the '055 patent. Such unlicensed systems, products, and/or services include, by way of

example and without limitation, the Avi Vantage Platform. In addition, on information and belief,

customers of Avi Networks directly infringe the '055 patent by putting the Infringing Products

into service by, for example, installing the Avi Vantage Platform on cloud infrastructure such as a customer's private cloud infrastructure or public cloud infrastructure.

74.     For example, Avi Networks has directly infringed the '055 patent by making, using, offering to sell, and selling the Avi Vantage Platform in violation of 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents. On information and belief, the Avi Vantage Platform infringes each and every claim element of one or more of at least independent claims 1 and 11 of the '055 patent. A chart illustrating this infringement is attached as Exhibit 15.

75.     More specifically, Avi Networks offers the Avi Vantage Platform for download via its website to customers. *See*, for example, https://avinetworks.com/download/, attached as Exhibit 9. Moreover, Avi Networks offers and sells licenses that enable its customers to activate and use the Avi Vantage Platform. *See*, for example, Exhibit 10. Further, Avi Networks uses the Avi Vantage Platform itself for development, testing, and/or demonstration purposes.

76.     On information and belief, Avi Networks takes active steps to induce infringement by others of one or more of at least independent claims 1 and 11 of the '055 patent in violation of 35 U.S.C. § 271(b), including customers that purchase the Infringing Products, either literally or under the doctrine of equivalents. Such active steps include, but are not limited to encouraging, advertising (including by internet websites such https://avinetworks.com/), promoting, and instructing others to use and/or how to use the dynamic response time capabilities of its Infringing Products. *See* Exhibit 15.

77.     On information and belief, Avi Networks knows or should know that such activities induce others to directly infringe one or more of at least independent claims 1 and 11 of the '055 patent. For example, Avi Networks knows or should know that its actions induce others to directly infringe the '055 patent because Avi Networks knows or should know about the existence of the

'055 patent, especially given the fact that one or more of Avi Networks' senior leaders, including CEO Pandey, are or should be aware of Citrix's extensive patent portfolio due to their previous Citrix employment.

78.     On information and belief, Avi Networks contributes to the infringement of at least independent claims 1 and 11 of the '055 patent by others, including its customers, distributors, and/or authorized resellers in violation of 35 U.S.C. § 271(c), either literally or under the doctrine of equivalents. Acts by Avi Networks that contribute to the infringement of others include, but are not limited to, the sale and offer for sale by Avi Networks of the Avi Vantage Platform software. The Avi Vantage Platform software is especially made for or adapted for use to infringe the '055 patent, and is not a staple article of commerce and is not suitable for substantial non-infringing use. By way of example, the dynamic response time capabilities of the Avi Vantage Platform software are all evidence that the Avi Vantage Platform software was especially made or adapted to infringe the '055 patent. The Avi Vantage Platform software is not suitable for use as a standalone product because, for example, it cannot function without other software and hardware components. The Avi Vantage Platform software cannot be used but to infringe the '055 patent.

79.     As such, Avi Networks knows or should know about the existence of the '055 patent and performs acts that it knows, or should know, induce, and/or contribute to the direct infringement of at least independent claims 1 and 11 of the '055 patent by others.

80.     Avi Networks has engaged in egregious behavior infringing the '055 patent, which has been duly issued by the United States Patent and Trademark Office, and is presumed valid. On information and belief, Avi Networks has known or should have known that its actions constituted and continue to constitute infringement of the '055 patent and that the '055 patent is valid no later than by the date Avi Networks was served with or otherwise notified of this Complaint. Avi

Networks could not reasonably, subjectively believe that its actions do not constitute infringement of the '055 patent, nor could it reasonably, subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that its actions constitute infringement, Avi Networks has continued its infringing activities. As such, Avi Networks willfully infringes the '055 patent.

81.     By its actions, Avi Networks has injured Citrix and is liable to Citrix for infringement of the '055 patent pursuant to 35 U.S.C. § 271.

82.     By its actions, Avi Networks' infringement of the '055 patent has irreparably injured Citrix. Unless such infringing acts are enjoined by this Court, Citrix will continue to suffer additional irreparable injury. Citrix has no adequate remedy at law.

83.     By its actions, Avi Networks' infringement of the '055 patent has damaged, and continues to damage, Citrix in an amount yet to be determined, of at least at least a reasonable royalty and/or lost profits that Citrix would have made but for Avi Networks' infringing acts.

## COUNT FOUR: INFRINGEMENT OF
## U.S. PATENT NO. 7,720,954

84.     Citrix re-alleges and incorporates by reference Paragraphs 1–39 above, as if fully set forth herein.

85.     The '954 patent covers a method of using a dynamic response time to determine responsiveness of network services, specifically by determining whether a deviation of response time falls within a predetermined threshold.

86.     Avi Networks uses Citrix's patented features of the '954 patent in its Infringing Products in violation of Citrix's patent rights. For example, the Infringing Products use dynamic response time to determine responsiveness of network service. As seen in the following excerpt from Avi Networks' documentation for the Avi Vantage Platform, the Infringing Products

determine response times: "End-to-End Timing: Avi measures client and server network latency, application response time, and data transfer time for every transaction. This powerful visualization tool helps benchmark user interactions with applications, flags deviations, and quickly identifies bottlenecks." *See* Exhibit 12, p. 3. Further, the Avi Vantage Platform computes several metrics that gauge response time such as the "l7_client.avg_application_response_time" metric that measures an average server/application response latency and the "l7_server.avg_application_response_time" metric that measures the average response latency measured of pool servers. *See* Exhibit 13.

87.     Further, as seen in the following excerpt from Avi Networks' documentation for the Avi Vantage Platform, the Infringing Products further determine whether a deviation of response time falls within a predetermined threshold:

Inline Analytics processing subsystems provide comprehensive analytics dashboards about applications, end users and the infrastructure:

- App Analytics with comprehensive end-to-end timing and customizable dashboard with key metrics time series for every virtual service
- A single App Health Score with drilldown, encompassing current and past application performance, infrastructure utilization and anomalous behavior
- Log Analytics providing real-time search capability for application transactions with dimensional analytics for over 20 dimensions such as geo, OS, browser, etc.
- Client Insights providing dimensional analytics on Real User Metrics (W3C Navigation timing and Resource timing) such as page load time, DNS query, connection establishment, data transfer, etc.
- Anomaly detection for significant deviation from auto learned baselines and auto correlation of events, configuration changes and anomalies across space and time

*See* Exhibit 14, p. 6.

88.     In violation of 35 U.S.C. § 271, Avi Networks has infringed, contributed to the infringement of, and/or induced others to infringe the '954 patent by, among other things, making, using, offering to sell, selling, and/or importing into the United States unlicensed systems, products, and/or services in a manner that infringes at least independent claim 1 of the '954 patent.

Such unlicensed systems, products, and/or services include, by way of example and without limitation, the Avi Vantage Platform. In addition, on information and belief, customers of Avi Networks directly infringe the '954 patent by putting the Infringing Products into service by, for example, installing the Avi Vantage Platform on cloud infrastructure such as a customer's private cloud infrastructure or public cloud infrastructure.

89.     For example, Avi Networks has directly infringed the '954 patent by making, using, offering to sell, and selling the Avi Vantage Platform in violation of 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents. On information and belief, the Avi Vantage Platform infringes each and every claim element of at least claim 1 of the '954 patent. A chart illustrating this infringement is attached as Exhibit 16.

90.     More specifically, Avi Networks offers the Avi Vantage Platform for download via its website to customers. *See*, for example, https://avinetworks.com/download/, attached as Exhibit 9. Moreover, Avi Networks offers and sells licenses that enable its customers to activate and use the Avi Vantage Platform. *See*, for example, Exhibit 10. Further, Avi Networks uses the Avi Vantage Platform itself for development, testing, and/or demonstration purposes.

91.     On information and belief, Avi Networks takes active steps to induce infringement by others of at least claim 1 of the '954 patent in violation of 35 U.S.C. § 271(b), including customers that purchase the Infringing Products, either literally or under the doctrine of equivalents. Such active steps include, but are not limited to encouraging, advertising (including by internet websites such https://avinetworks.com/), promoting, and instructing others to use and/or how to use the dynamic response time capabilities of its Infringing Products. *See* Exhibit 16.

92.     On information and belief, Avi Networks knows or should know that such activities induce others to directly infringe at least claim 1 of the '954 patent. For example, Avi Networks knows or should know that its actions induce others to directly infringe the '954 patent because Avi Networks knows or should know about the existence of the '954 patent, especially given the fact that one or more of Avi Networks' senior leaders, including CEO Pandey, are or should be aware of Citrix's extensive patent portfolio due to their previous Citrix employment.

93.     On information and belief, Avi Networks contributes to the infringement of at least claim 1 of the '954 patent by others, including its customers, distributors, and/or authorized resellers in violation of 35 U.S.C. § 271(c), either literally or under the doctrine of equivalents. Acts by Avi Networks that contribute to the infringement of others include, but are not limited to, the sale and offer for sale by Avi Networks of the Avi Vantage Platform software. The Avi Vantage Platform software is especially made for or adapted for use to infringe the '954 patent, and is not a staple article of commerce and is not suitable for substantial non-infringing use. By way of example, the dynamic response time capabilities of the Avi Vantage Platform software are all evidence that the Avi Vantage Platform software was especially made or adapted to infringe the '954 patent. The Avi Vantage Platform software is not suitable for use as a standalone product because, for example, it cannot function without other software and hardware components. The Avi Vantage Platform software cannot be used but to infringe the '954 patent.

94.     As such, Avi Networks knows or should know of the '954 patent and performs acts that it knows, or should know, induce, and/or contribute to the direct infringement of at least claim 1 of the '954 patent by others.

95.     Avi Networks has engaged in egregious behavior infringing the '954 patent, which has been duly issued by the United States Patent and Trademark Office, and is presumed valid. On

information and belief, Avi Networks has known or should have known that its actions constituted and continue to constitute infringement of the '954 patent and that the '954 patent is valid no later than by the date Avi Networks was served with or otherwise notified of this Complaint. Avi Networks could not reasonably, subjectively believe that its actions do not constitute infringement of the '954 patent, nor could it reasonably, subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that its actions constitute infringement, Avi Networks has continued its infringing activities. As such, Avi Networks willfully infringes the '954 patent.

96.     By its actions, Avi Networks has injured Citrix and is liable to Citrix for infringement of the '954 patent pursuant to 35 U.S.C. § 271.

97.     By its actions, Avi Networks' infringement of the '954 patent has irreparably injured Citrix. Unless such infringing acts are enjoined by this Court, Citrix will continue to suffer additional irreparable injury. Citrix has no adequate remedy at law.

98.     By its actions, Avi Networks' infringement of the '954 patent has damaged, and continues to damage, Citrix in an amount yet to be determined, of at least at least a reasonable royalty and/or lost profits that Citrix would have made but for Avi Networks' infringing acts.

## COUNT FIVE: FALSE ADVERTISING
### (Lanham Act Section 43(a); 15 U.S.C. § 1125(a))

99.     Citrix re-alleges and incorporates by reference 1–39 above, as if fully set forth herein.

100.    Avi Networks markets the Avi Vantage Platform on its website, including through a chart that purports to compare features of the Avi Vantage Platform and Citrix's NetScaler technology, where numerous claims in the comparison chart regarding Citrix's NetScaler technology, including the claims identified in Paragraphs 12–20 *supra*, are intentionally false

(some of which are literally false) and misleading in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125. *See* Exhibits 5 and 6.

101.   Avi Networks' intentionally false and misleading claims have a tendency to deceive a substantial portion of the intended consumers into purchasing the Avi Vantage Platform instead of Citrix's NetScaler technology by misleading consumers into wrongly believing that Citrix's NetScaler technology lacks features that the Avi Vantage Platform purportedly provides or that the Avi Vantage Platform is superior to Citrix's NetScaler technology.

102.   Such deception is material in that it is likely to influence consumer purchasing decisions because Avi Networks' claims relate to fundamental features of the parties' technologies.

103.   Both the Avi Vantage Platform and Citrix's NetScaler technology have traveled in interstate commerce.

104.   As a result of Avi Networks' conduct, Citrix has been and continues to be substantially and irreparably harmed. As a proximate result of Avi Networks' false and misleading claims, Citrix has suffered injury to its business, goodwill, and reputation, all to its detriment, and in an amount not yet fully ascertained.

105.   Unless this Court enjoins Avi Networks from continuing to make these false and misleading claims and orders their retraction and/or other correction, Avi Networks' conduct will continue to irreparably injure Citrix and will continue to cause Citrix to suffer a loss of consumer confidence, sales, profits, and goodwill.

106.   Pursuant to 15 U.S.C. § 1116, Citrix is entitled to preliminary and permanent injunctive relief to prevent Avi Networks' continuing acts.

107.   Pursuant to 15 U.S.C. § 1117, Citrix is entitled to damages for Avi Networks' Lanham Act violations, an accounting of profits made by Avi Networks on sales of the Avi

Vantage Platform, disgorgement of Avi Networks' profits, and recovery of Citrix's costs and reasonable attorneys' fees incurred in this action.

108. Avi Networks' false and misleading claims are willful, making this an exceptional case and entitling Citrix to recover treble damages and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

## COUNT SIX: UNFAIR COMPETITION
### (Lanham Act Section 43(a); 15 U.S.C. § 1125(a))

109. Citrix re-alleges and incorporates by reference 1–39 above, as if fully set forth herein.

110. The NetScaler technology, which has become uniquely associated with Citrix, is being unlawfully appropriated and impaired by Avi Networks.

111. Avi Networks markets the Avi Vantage Platform on its website, including through a chart that purports to compare features of the Avi Vantage Platform and Citrix's NetScaler technology, where numerous claims in the comparison chart regarding Citrix's NetScaler technology, including the claims identified in Paragraphs 12–20 *supra*, are intentionally false (some of which are literally false) and misleading. *See* Exhibits 5 and 6.

112. Avi Networks' intentionally false and misleading claims are likely to cause confusion or mistake or to deceive as to Citrix's NetScaler technology because Avi Networks' claims lead consumers to wrongly believe that Citrix's NetScaler technology lacks features that Avi Networks' technology contains or that the Avi Vantage Platform is superior to Citrix's NetScaler technology.

113. Avi Networks' false and misleading claims have enabled it to unfairly capitalize on Citrix's reputation and goodwill, to the detriment of Citrix.

114. Both the Avi Vantage Platform and Citrix's NetScaler technology have traveled in interstate commerce.

115. Avi Networks' false and misleading advertising practices constitute unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

116. As a result of Avi Networks' conduct, Citrix has been and continues to be substantially and irreparably harmed. As a proximate result of Avi Networks' false and misleading claims, Citrix has suffered injury to its business, goodwill, and reputation, all to its detriment, and in an amount not yet fully ascertained.

117. Unless this Court enjoins Avi Networks from continuing to make these false claims and orders their retraction and/or other correction, Avi Networks' conduct will irreparably injure Citrix and will continue to cause Citrix to suffer a loss of consumer confidence, sales, profits, and goodwill.

118. Pursuant to 15 U.S.C. § 1116, Citrix is entitled to preliminary and permanent injunctive relief to prevent Avi Networks' continuing acts.

119. Pursuant to 15 U.S.C. § 1117, Citrix is entitled to damages for Avi Networks' Lanham Act violations, an accounting of profits made by Avi Networks on sales of the Avi Vantage Platform, disgorgement of Avi Networks' profits, and recovery of Citrix's costs and reasonable attorneys' fees incurred in this action.

120. Avi Networks' false statements are willful, making this an exceptional case entitling Citrix to recover treble damages and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

## COUNT SEVEN: DECEPTIVE TRADE PRACTICES
### (Delaware Deceptive Trade Practices Act; 6 Del. C. § 2532)

121.    Citrix re-alleges and incorporates by reference 1–39 above, as if fully set forth herein.

122.    Avi Networks has engaged in deceptive trade practices through its advertising claims that are replete with false and misleading statements that disparage Citrix and its NetScaler technology, including through a chart on its website that purports to compare features of the Avi Vantage Platform and Citrix's NetScaler technology, where numerous claims in the comparison chart regarding Citrix's NetScaler technology, including the claims identified in Paragraphs 12–20 *supra*, are intentionally false (some of which are literally false) and misleading. See Exhibits 5 and 6.

123.    Avi Networks' intentionally false and misleading claims are likely to cause confusion or mistake or to deceive as to Citrix's NetScaler technology because Avi Networks' claims lead consumers to wrongly believe that Citrix's NetScaler technology lacks features that the Avi Vantage Platform purportedly contains or that the Avi Vantage Platform is superior to Citrix's NetScaler technology.

124.    Avi Networks' false and misleading statements are likely to cause confusion, deception, or misunderstanding in violation of 6 Del. C. § 2532.

125.    As a result of Avi Networks' conduct, Citrix has been and continues to be substantially and irreparably harmed. As a proximate result of Avi Networks' false and misleading claims, Citrix has suffered injury to its business, goodwill, and reputation, all to its detriment, and in an amount not yet fully ascertained.

126.    Unless this Court enjoins Avi Networks from continuing to make these false and misleading claims and orders their retraction and/or correction, Avi Networks' conduct will

continue to irreparably injure Citrix and will continue to cause Citrix to suffer a loss of consumer confidence, sales, profits, and goodwill.

127.    Citrix is entitled to preliminary and permanent injunctive relief to prevent Avi Networks' continuing acts.

128.    Avi Networks has willfully engaged in the aforementioned deceptive trade practices, making this an exceptional case.

129.    Pursuant to 6 Del. C. § 2533, Citrix is entitled to treble damages, attorneys' fees and costs, and injunctive relief.

**COUNT EIGHT: UNFAIR COMPETITION**
**(Common Law)**

130.    Citrix re-alleges and incorporates by reference 1–39 above, as if fully set forth herein.

131.    Avi Networks has made false and misleading claims regarding Citrix's NetScaler technology in the marketing of the Avi Vantage Platform to unfairly gain a competitive advantage over Citrix.

132.    Avi Networks markets the Avi Vantage Platform on its website, including through a chart that purports to compare features of the Avi Vantage Platform and Citrix's NetScaler technology, where numerous claims in the comparison chart regarding Citrix's NetScaler technology, including the claims identified in Paragraphs 12–20 *supra*, are intentionally false (some of which are literally false) and misleading. *See* Exhibits 5 and 6.

133.    On information and belief, Avi Networks' conduct has wrongly interfered with Citrix's reasonable business relationships concerning the NetScaler technology, including expected sales, because consumers wrongly believe that Citrix's NetScaler technology lacks features that the Avi Vantage Platform provides.

134.    As a result of Avi Networks' conduct, Citrix has been and continues to be substantially and irreparably harmed. As a proximate result of Avi Networks' false and misleading claims and wrongful interference with Citrix's business relationships, Citrix has suffered injury to its business, goodwill, and reputation, all to its detriment, and in an amount not yet fully ascertained.

135.    Unless this Court enjoins Avi Networks from continuing to make these false claims and orders their retraction and/or other correction, Avi Networks' conduct will continue to irreparably injure Citrix and will continue to cause Citrix to suffer a loss of consumer confidence, sales, profits, and goodwill.

136.    Citrix is entitled to preliminary and permanent injunctive relief to prevent Avi Networks' continuing acts.

137.    Citrix is entitled to damages for Avi Networks' unfair competition, an accounting of profits made by Avi Networks on sales of the Avi Vantage Platform, and recovery of Citrix's costs and reasonable attorneys' fees incurred in this action.

138.    Avi Networks knew or should have known that its conduct was reasonably likely to result in injury, damage, or other harm, thus warranting the award of punitive damages.

## DEMAND FOR JURY TRIAL

139.    Citrix hereby demands trial by jury on all claims and issues so triable.

## PRAYER FOR RELIEF

140.    Wherefore, Citrix respectfully requests that this Court enter judgment against Avi Networks as follows:

> A. That one or more claims of the '493 patent, '120 patent, '055 patent, and/or the '954 patent have been infringed by Avi Networks;

B.  That Avi Networks' infringement of the '493 patent, '120 patent, '055 patent, and/or '954 patent has been willful;

C.  An award of damages adequate to compensate Citrix for the patent infringement that has occurred, together with pre-judgment interest and costs;

D.  An accounting for acts of infringement not presented at trial and/or up to the judgment and an award by the Court of additional damage for any such acts of infringement;

E.  A preliminary and permanent injunction against Avi Networks from further infringement, or alternatively, award an ongoing royalty for Avi Networks' post-verdict infringement, payable on each product or service offered by Avi Networks that is found to infringe one or more of the patents asserted herein, and on all future products and services that are not colorably different from those found to infringe;

F.  An award of all other damages permitted by 35 U.S.C. § 284, including increased damages up to three times the amount of compensatory damages found;

G.  A finding that this is an exceptional case and an award to Citrix of its costs and reasonable attorneys' fees incurred in this action as provided by 35 U.S.C. § 285;

H.  That Avi Networks' false and misleading advertising practices constitute false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125, and award at least disgorgement of Avi Networks' profits and treble damages;

I.  That Avi Networks' false and misleading advertising practices constitute unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125, and award at least disgorgement of Avi Networks' profits and treble damages;

31

J.  That Avi Networks' false and misleading advertising practices constitute deceptive trade practices in violation of the Delaware Deceptive Trade Practices Act, 6 Del. C. § 2532;

K.  That Avi Networks' false and misleading advertising practices constitute unfair competition under the common law of Delaware;

L.  That Avi Networks' conduct in connection with its false and misleading advertising practices was willful;

M.  A preliminary and permanent injunction ordering that Avi Networks and all officers, directors, agents, servants, employees, affiliates, attorneys, successors, and assigns of Avi Networks, and all persons in active concert or participation therewith, refrain from directly or indirectly using in commerce or causing to be published or otherwise disseminated any promotional materials or advertising materials containing any of the false or misleading claims described in this Complaint, including the false and misleading claims appearing in Avi Networks' comparison chart (*see*, *e.g.*, Exhibits 5 and 6);

N.  A preliminary and permanent injunction ordering that Avi Networks and all officers, directors, agents, servants, employees, affiliates, attorneys, successors, and assigns of Avi Networks, and all persons in active concert or participation therewith, refrain from directly or indirectly using in commerce or causing to be published or otherwise disseminated any unfair, inaccurate, or misleading claim, statement, or comparison of the features of Citrix's NetScaler technology;

O.  Order that Avi Networks shall not in the future advertise or use the false and misleading content, as described herein;

32

P.  Award Citrix an accounting of Avi Networks' profits, advantages, and gains derived from its unlawful activities arising from its false claims, unfair competition, and deceptive trade practices, and payment of Avi Networks' profits, gains, and advantages derived from its unlawful conduct, such damages to be trebled pursuant to 15 U.S.C. §§ 1117 and 1125(a), 6 Del. C. §§ 2531 *et seq.*, and the common law of Delaware;

Q.  Award Citrix its compensatory damages, including adequate compensation for lost profits and harm to Citrix's reputation, at an amount to be determined at trial, such damages to be trebled pursuant to 15 U.S.C. §§ 1117 and 1125(a), 6 Del. C. §§ 2531 *et seq.*, and the common law of Delaware;

R.  Award Citrix taxable costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a) and 6 Del. C. 2531 *et. seq.*; and

S.  Such other relief, including other monetary and equitable relief, as this Court deems just and proper.

(signature on next page)

Dated:  December 21, 2017                         FISH & RICHARDSON P.C.

                                                 By: */s/ Douglas E. McCann*
                                                 Douglas E. McCann (#3852)
                                                 222 Delaware Avenue, 17th Floor,
                                                 P.O. Box 1114
                                                 Wilmington, DE 19801
                                                 Telephone: (302) 652-5070
                                                 Facsimile: (302) 652-0607
                                                 Email:  dmccann@fr.com

                                                 Ruffin B. Cordell
                                                 Indranil Mukerji
                                                 901 15th Street, NW, Suite 700
                                                 Washington, D.C.  20005
                                                 Telephone: (202) 783-5070
                                                 Facsimile: (202) 783-2331
                                                 Email: Cordell@fr.com; Mukerji@fr.com

                                                 Adam Kessel
                                                 One Marina Park Drive
                                                 Boston, MA 02210-1878
                                                 Telephone: 617-542-5070
                                                 Fax: 617-542-8906
                                                 Email:  Kessel@fr.com

                                                 Elizabeth Brenckman
                                                 601 Lexington Avenue
                                                 52nd Floor
                                                 New York, NY 10022-4611
                                                 Telephone:  212-765-5070
                                                 Fax: 212-258-2291
                                                 Email:  Brenckman@fr.com

                                                 John-Paul Fryckman
                                                 12390 El Camino Real
                                                 San Diego, CA 92130
                                                 Telephone:  858-678-5070
                                                 Fax:  858-678-5099
                                                 Email:  Fryckman@fr.com

                                                 ***ATTORNEYS FOR PLAINTIFF***
                                                 ***CITRIX SYSTEMS, INC.***