## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CITRIX SYSTEMS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 17-1843-VAC-SRF |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| AVI NETWORKS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

### DEFENDANT'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO DISMISS CITRIX'S COUNTS III AND IV PURSUANT TO FED. R. CIV. P. 12(b)(6)

OF COUNSEL:

Josh Krevitt
Brian A. Rosenthal
GIBSON DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Tel:  (212) 351-4000

Y. Ernest Hsin
GIBSON DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Tel:  (415) 393-8200

Brian K. Andrea
GIBSON DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC  20036-5306
Tel:  (202) 955-8500

Dated:  June 6, 2018
5831189 / 45081

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Stephanie E. O'Byrne (#4446)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE  19801
Tel:  (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
sobyrne@potteranderson.com

*Attorneys for Defendant Avi Networks, Inc.*

# TABLE OF CONTENTS

Page

I.      INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 1

II.     NATURE AND STAGE OF THE PROCEEDINGS ......................................................... 3

III.    STATEMENT OF FACTS ................................................................................................ 4

    A.      The Specification of the '954 and '055 Patents ................................................... 4

    B.      The Claims of the '954 and '055 Patents ............................................................. 6

    C.      Prosecution (and Rejection) of the Asserted Patents ........................................... 7

IV.     LEGAL STANDARDS .................................................................................................... 8

    A.      Motion to Dismiss ................................................................................................ 8

    B.      35 U.S.C. § 101 .................................................................................................... 9

V.      THE ASSERTED CLAIMS ARE INELIGIBLE ........................................................... 10

    A.      The Asserted Claims are Directed to an Abstract Idea ...................................... 11

        1.      The Claims Recite Determining Service Availability Based on
                Deviation from an Average Response Time .............................................. 11

        2.      The Claims Can Be Performed Entirely in the Human Mind ................... 12

    B.      The Asserted Claims Do Not Contain an Inventive Concept .............................. 15

        1.      The "Monitor," "Probe," and "Device" Limitations Do Not
                Provide an Inventive Concept ................................................................... 16

        2.      The Patent Office Twice Rejected the Claims as Ineligible ..................... 18

        3.      The "Protocol" Limitations Do Not Provide an Inventive
                Concept ..................................................................................................... 19

        4.      The Intended Environment Does Not Provide an Inventive
                Concept ..................................................................................................... 19

        5.      The "Ordered Combination" Does Not Provide an Inventive
                Concept ..................................................................................................... 20

VI.     CONCLUSION ............................................................................................................... 20

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
   882 F.3d 1121 (Fed. Cir. 2018) .................................................................................................. 9

*Accenture Glob. Servs., GmbH v. Guidewire Software, Inc.*,
   728 F.3d 1336 (Fed. Cir. 2013) ................................................................................................ 18

*Affinity Labs of Texas, LLC v. Amazon.com, Inc.*,
   838 F.3d 1266 (Fed. Cir. 2016) ................................................................................................ 11

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
   134 S. Ct. 2347 (2014) ...................................................................................................... *passim*

*Ariosa Diagnostics, Inc. v. Sequenom, Inc.*,
   788 F.3d 1371 (Fed. Cir. 2015) ................................................................................................ 13

*Automated Tracking Sols., LLC v. Coca-Cola Co.*,
   --F. App'x --, 2018 WL 935455 (Fed. Cir. Feb. 16, 2018) .................................................... 17

*Bascom Glob. Internet Services, Inc. v. AT&T Mobility LLC*,
   827 F.3d 1341 (Fed. Cir. 2016) ................................................................................................ 20

*Berkheimer v. HP Inc.*,
   --F.3d--, 2018 WL 2437140 (Fed. Cir. May 31, 2018) ......................................................... 16

*Berkheimer v. HP Inc.*,
   881 F.3d 1360 (Fed. Cir. 2018) .................................................................................................. 9

*Bilski v. Kappos*,
   561 U.S. 593 (2010) ..................................................................................... 10, 13, 18, 19

*In re Bilski*,
   545 F.3d 943 (Fed. Cir. 2008) ................................................................................................. 18

*buySAFE, Inc. v. Google, Inc.*,
   765 F.3d 1350 (Fed. Cir. 2014) .................................................................................. 13, 18, 19

*Clarilogic, Inc. v. FormFree Holdings Corp.*,
   681 F. App'x. 950 (Fed. Cir. 2017) ......................................................................................... 10

*Cloud Satchel, LLC v. Amazon.com, Inc.*,
   76 F.Supp.3d 553 (D. Del. 2014) ............................................................................................ 17

**TABLE OF AUTHORITIES** *(continued)*

Page(s)

*Coffelt v. NVIDIA Corp.*,
    680 F. App'x. 1010 (Fed. Cir. 2017) ....................................................................... 13

*Comcast IP Holdings I, LLC v. Sprint Commc'ns. Co. L.P.*,
    55 F. Supp. 3d 544 (D. Del. 2014)..................................................................... 15, 19

*In re Comiskey*,
    499 F. 3d 1365 (Fed. Cir. 2007)................................................................................. 9

*Content Extraction & Transmission LLC v. Wells Fargo Bank, NA*,
    776 F.3d 1343 (Fed. Cir. 2014).......................................................................... 10, 17

*Cybersource Corp. v. Retail Decisions, Inc.*,
    654 F.3d 1366 (Fed. Cir. 2011).......................................................................... 10, 13

*Data Engine Techs. LLC v. Google Inc.*,
    211 F. Supp. 3d 669 (D. Del. 2016)......................................................................... 13

*DDR Holdings, LLC v. Hotels.com, L.P.*,
    773 F.3d 1245 (Fed. Cir. 2014)............................................................................... 19

*Diamond v. Chakrabarty*,
    447 U.S. 303 (1980).................................................................................................. 9

*Diamond v. Diehr*,
    450 U.S. 175 (1981)................................................................................................ 19

*Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*,
    758 F.3d 1344 (Fed. Cir. 2014)............................................................................... 10

*Elec. Power Grp., LLC v. Alstom S.A.*,
    830 F.3d 1350 (Fed. Cir. 2016).......................................................................... 14, 15

*Everglades Game Techs., LLC v. Supercell, Inc.*,
    C.A. No. 14-643-GMS, 2015 WL 4999654 (D. Del. Aug. 21, 2015) ....................... 8

*FairWarning IP, LLC v. Iatric Systems, Inc.*,
    839 F.3d 1089 (Fed. Cir. 2016)............................................................................... 14

*Funk Bros. Seed Co. v. Kalo Inoculant Co.*,
    333 U.S. 127 (1948).................................................................................................. 9

*Gammino v. Am. Tel. & Tel. Co.*,
    127 F. Supp. 3d 264 (D. Del. 2015)......................................................................... 17

*I/P Engine, Inc. v. AOL, Inc.*,
    576 F. App'x 982 (Fed. Cir. 2014) ........................................................................... 8

## TABLE OF AUTHORITIES *(continued)*

Page(s)

*Intellectual Ventures I LLC v. Symantec Corp.*,
   100 F. Supp. 3d 371 (D. Del. 2015)................................................................. 13

*Intellectual Ventures I LLC v. Symantec Corp.*,
   234 F. Supp. 3d 601 (D. Del. 2017)............................................................. 11, 17

*Internet Patents Corp. v. Active Network, Inc.*,
   790 F.3d 1343 (Fed. Cir. 2015)................................................................... 10, 12

*Mayo Collaborative Servs. v. Prometheus Labs.*,
   566 U.S. 66 (2012)................................................................................................ 9

*Nice Systems Ltd. v. Clickfox, Inc.*,
   207 F. Supp. 3d 393 (D. Del. 2016)..................................................................... 17

*OIP Techs., Inc. v. Amazon.com, Inc.*,
   788 F.3d 1359 (Fed. Cir. 2015)......................................................................... 8, 15

*Orostream LLC v. ABS-CBN Int'l*,
   C.A. No. 2:15-cv-248-JRG, 2015 WL 5836949 (E.D. Tex. Oct. 1, 2015) ............................ 15

*Parker v. Flook*,
   437 U.S. 584 (1978)........................................................................................... 14

*Procter & Gamble Co. v. Quantificare Inc.*,
   288 F. Supp. 3d 1002 (N.D. Cal. 2017) ................................................................. 10

*RecogniCorp, LLC v. Nintendo Co.*,
   855 F.3d 1322 (Fed. Cir. 2017)........................................................................... 10

*Sound View Innovations, LLC v. Facebook, Inc.*,
   204 F. Supp. 3d 655 (D. Del. 2016)....................................................................... 8

*In re TLI Commc'ns. LLC Patent Litig.*,
   823 F.3d 607 (Fed. Cir. 2016)............................................................................. 11

*Two-Way Media Ltd. v. Comcast Cable Commc'ns., LLC*,
   C.A. No. 14-1006-RGA, 2016 WL 4373698 (D. Del. Aug. 15, 2016)................................... 15

*Ultramercial, Inc. v. Hulu, LLC*,
   772 F.3d 709 (Fed. Cir. 2014)............................................................................. 19

**Statutes and Rules**

35 U.S.C. § 101 .................................................................................................... 1

Fed. R. Civ. P. 12(b)(6)................................................................................... 1, 10

Plaintiff Citrix Systems, Inc. ("Citrix") asserts, among others, U.S. Patent Nos. 7,720,954 ("the '954 Patent") (Exhibit A) and 8,230,055 ("the '055 Patent") (Exhibit B) against Defendant Avi Networks, Inc. ("Avi").  Avi moves to dismiss, under Rule 12(b)(6), Counts 3 and 4 (infringement of the '954 and '055 Patents) of Citrix's Complaint because the claims of the '954 and '055 Patents are patent-ineligible under 35 U.S.C. § 101.[1]

## I.   INTRODUCTION AND SUMMARY OF ARGUMENT

The claims[2] of the '954 and '055 Patents relate entirely to an abstract idea that, under bedrock Supreme Court precedent, are not eligible for patentability.  In fact, the Patent Office rejected the original claims—not once, but twice—as ineligible, and the claims were ultimately allowed based on law that the Supreme Court has since explicitly rejected.  Applying the current law set forth by the Supreme Court and the Federal Circuit, the Asserted Claims are clearly ineligible and should be dismissed.  Patent eligibility is a "threshold test," and courts routinely grant motions to dismiss such ineligible patent claims.

The Supreme Court has long held that the patent laws do not provide protection for abstract ideas under 35 U.S.C. §101.  Most recently, the Court held that claims of issued patents should be found ineligible when they are directed to an "abstract idea," and where there is no "inventive concept" in the claims that transforms that abstract idea into a patent-eligible invention.  *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014).  The Asserted Claims are ineligible because they are directed solely to the abstract idea of determining whether

---

[1]  Cisco asserts two other patents in Counts 1 and 2, which are not the subject of this motion.

[2]  The Complaint identifies as asserted claims only independent claims 1 and 11 of the '055 Patent and independent claim 1 of the '954 Patent ("Asserted Claims").  Thus, Defendant's motion is addressed only to those three claims.  The other claims in the '055 and '954 Patents are similarly ineligible.  If any other claims are identified by Plaintiff as allegedly infringed, Defendant reserves the right to address the ineligibility of any other such claims at that time.

a service (such as a computer application) is available based on whether the response time exceeds an average response time by a certain amount.  This concept of determining availability based on whether something takes longer than average cannot be patented merely by applying it to a computer environment.  Since there are no fact disputes that bear on eligibility, Defendant seeks judgment as a matter of law that the claims are patent-ineligible.

The Asserted Claims are clearly ineligible under the two-part test set forth by the Supreme Court.  ***First***, the claims are directed to an abstract idea.  People use the claimed abstract idea in everyday life whenever they conclude that something or someone is unavailable because a task or activity is taking longer than normal.  For example, if a woman calls her brother and the phone rings four times, but he usually picks up after two rings, she may conclude that he is not available.  Or if it takes a child ten minutes on average to walk home from school, a worried parent may conclude there is a problem after 20 minutes.

Indeed, the patents themselves concede that the only purported new idea is using "dynamic" response time thresholds that are based on the average response time, rather than a "static" response time threshold known in the prior art.  For example, rather than concluding that a network service is unavailable when it takes more than ten seconds to respond, the patents suggest concluding that the service is unavailable when it takes five seconds longer than average to respond.  That is it: the patents are directed solely to determining that a service is unavailable when it takes a set amount of time more than the average time.  That is an abstract idea, and one cannot obtain a patent merely by using this idea in a conventional computer environment.

***Second***, there is nothing in the claims that provides an inventive concept that provides "something more" that could render the claimed invention eligible.  Instead, the claims merely recite generic and conventional computer and hardware components: "device," "appliance,"

"monitor," and "probe."  None of these components are used in any inventive way in the patents' claims.  Indeed, the patents themselves acknowledge that determining availability of a service based on response time using such devices is "conventional."  As post-*Alice* Federal Circuit decisions have held time and again (and as discussed below), claims reciting such generic computer or hardware components executing an abstract idea are ineligible for patent protection.

Importantly, as noted above, the Patent Office twice rejected the claims of the parent '954 Patent as ineligible for patent protection under section 101.  The applicants ultimately were able to overcome those objections only by arguing, *under controlling law at that time*, that the claims are eligible because they recite a generic device.  Although that distinction might have been dispositive at the time of prosecution, the Supreme Court in *Alice* subsequently made clear that merely including reference to a generic device or computer is not enough to make an abstract idea eligible.  Instead, to be eligible, the claim must contain an actual inventive concept—*i.e.*, some advancement beyond what was conventionally known and beyond the abstract concept itself.  Merely reciting conventional computer or other hardware to perform the abstract idea does not pass muster.  *Alice*, 134 S. Ct. at 2357 ("The introduction of a computer into the claims does not alter the analysis. . . .").  Thus, the very basis on which Citrix got its claims allowed is no longer the law; under today's law, the claims would never have been allowed in the first place.

Because the claims of the '954 and '055 Patents meet the Supreme Court's two-part test for patent ineligibility, Defendant's motion to dismiss Citrix's Counts 3 and 4 should be granted.

## II.      NATURE AND STAGE OF THE PROCEEDINGS

Citrix filed its Complaint against Avi on December 21, 2017 but did not serve the Complaint until March 19, 2018.  Avi files this motion in lieu of an Answer.

### III.     STATEMENT OF FACTS

#### A.     The Specification of the '954 and '055 Patents

The '954 and '055 Patents share the same specification,[3] which is directed at "using a dynamic response time to determine responsiveness of one or more network services" in a data communication network.  *See* Ex. A ('954 Patent) at 1:8-11; D.I. 1 ¶¶ 70 and 85.  Specifically, the patents explain that they "cover[] a method of using a dynamic response time to determine responsiveness of network services, specifically by determining whether a deviation of response time falls within a predetermined threshold."  *Id.*  The patents state that they improve upon "conventional systems" that were already used to determine "responsiveness of servers to network requests."  Ex. A ('954 Patent) at 1:15-16.  In such conventional systems, the specification states, an administrator defines a "static response time" that is used to determine whether a server is unavailable—"[i]f a server fails to respond to a request within the allocated response time, the server may be identified as an unavailable server."  *Id.* at 1:15-20.  The specification notes two drawbacks to such a system that uses a pre-set static response time as the trigger to determining that there is a problem:  (1) it "would not typically accommodate variations in response time due to increased load or type of request" (*id.* at 1:20-22), and (2) it would not "have the flexibility to support different response times needed when responding to requests for different servers or network services on different servers" (*id.* at 1:23-26).  Thus, the specification indicates that a system for "supporting a variable response time and providing accurate identification of the availability of one of a plurality of network services or servers having varying average response times would be desirable."  *Id.* at 1:35-38.

---

[3]  The '055 Patent is a continuation of the '954 Patent.  *See* Ex. B ('055 Patent).

The specification thus describes "a method for using a dynamic response time to determine responsiveness of one or more network services on a server."  *See* Ex. A ('954 Patent) at 26:45-47; *see also id.* at Fig. 5 (flow diagram depicting method).  As shown in Figure 4, the system includes "servers" (106) and an "appliance" (200) having "monitors" (410), "probes" (420), and a "virtual server" (275).  *Id.* at 26:30-34. Each of the servers (106) "may provide one or more network-related services" (270).  *Id.* at 26:34-36.



*Fig. 4*

In the disclosed method, the monitor (410) first determines "a response time for each of one or more network services responding to requests."  *Id.* at 26:48-49; *see also id.* at 27:3-18 (indicating that the "probes" can be used to determine the response time) and 29:18-30:6.  The monitor then "establishes an average response time for a probe based on the determined response time for each of the one or more network services . . . ."  *Id.* at 26:50-57; *see also id.* at 30:7-60.  Next, the monitor determines a "predetermined threshold for which the response time of the one or more network services 270 may deviate from the average response time and maintain an indication of responsiveness."  *Id.* at 26:58-62; *see also id.* at 30:61-31:20.  The monitor then determines whether the response time of the services "deviates from the average response time by the predetermined threshold."  *Id.* at 26:62-67; *see also id.* at 31:21-55.  If the response time deviates from the average response time by more than the threshold, the service is deemed unavailable. *Id.* at 26:67-27:2; *see also id.* at 31:56-32:16.

### B.  The Claims of the '954 and '055 Patents

The '954 and '055 Patents each have two independent claims: claims 1 and 18 of the '954 Patent and claims 1 and 11 of the '055 Patent.[4]  *See* Ex. A ('954 Patent) at 32:34-34:49; Ex. B ('055 Patent) at 32:27-34:26.  Claim 1 of each patent is a method claim;  the other two independent claims are system claims.  The alleged invention of each independent claim is similar, and is directed merely at determining the availability or unavailability of a network service using the following steps:  (1) determining a response time for a service; (2) calculating an average response time; (3) establishing a predetermined deviation threshold; and (4) determining availability of the service based on whether response time deviation from the average exceeds the threshold.  This is illustrated graphically below using claim 1 of the '055 Patent as a representative claim:



**1**. A method for determining responsiveness of a service via a particular protocol, the method comprising:

(a) determining, by a device intermediary to a plurality of clients and a plurality of services, response times from each of a plurality of services to respond to requests via a first type of protocol of a plurality of protocols;  →  **1) Determining response time**

(b) calculating, by the device, an average response time for the first type of protocol from each of the response times of the plurality of services;  →  **2) Calculating average response time**

(c) establishing, by the device, a predetermined threshold for which a response time of a service for the first type of protocol may deviate from the average response time; and  →  **3) Establishing deviation threshold**

(d) identifying, by the device, a service as available responsive to determining that a deviation of the response time of the service from the average response falls within the predetermined threshold.  →  **4) Determining availability based on whether response time deviation exceeds threshold**

---

[4]  The '954 Patent has 22 total claims and the '055 Patent has 20 total claims.  As noted above, Citrix's Complaint alleges infringement of only independent claim 1 of the '954 Patent (*see* D.I. 1 ¶ 88) and independent claims 1 and 11 of the '055 Patent (*id.* ¶ 73).

The other independent claims of the patents are similar in structure to claim 1 of the '055 Patent.[5] Independent claim 11 of the '055 Patent is a system claim which requires performing the method of claim 1 using "one or more monitors." *See* Ex. B ('055 Patent) at 33:10-25. The independent claims of the '954 Patent also require performing a method similar to that of claim 1 of the '055 Patent, but using a "monitor" and "probes." *See* Ex. A ('954 Patent) at 32:34-54 and 34:5-30.

All of these claimed components in all of the claims are generic and defined solely by their function. For example, claim 1 of the '954 Patent states that the "monitor" determines a response time and an average response time. There is nothing specialized or unique about the claimed "monitor." Moreover, the patent fails to provide any specifics about the claimed devices. The specification states only that the "monitor" and "probes" could "be provided as software, hardware, or a combination of software and hardware." *Id.* at 26:36-39. The patents also state that the monitor and probes "may comprise applications, processes, services, tasks, logic, functions, or executable instructions." *Id.* at 26:39-41. These descriptions are as generic as it gets, as they would apply to literally any device that performs the claimed function.

### C.   Prosecution (and Rejection) of the Asserted Patents

During prosecution, the Patent Office repeatedly rejected the original claims as ineligible for patentability. Specifically, during prosecution of the '954 Patent (which is the parent of the '055 Patent), the Examiner initially rejected all of the claims "under 35 U.S.C. 101 because the claimed invention is directed to non-statutory subject matter." *See* Ex. C ('954 file history, 11/28/2008 Office Action) at 2. In doing so, the Examiner noted that "[h]ardware can be added to these independent claims … to overcome to 35 U.S.C. 101 rejection," since that was the law at

---

[5] Defendant chose claim 1 of the '055 Patent to illustrate the claimed invention, but there are slight differences among the claims. For example, the "protocol" requirements are not present in the claims of the '954 Patent.

the time.  *Id.*  In response, Citrix argued that the subject matter of the claims recites "a machine

and thus is statutory subject matter," citing the existing law at the time on section 101.  Ex. D

('954 file history, 2/27/2009 Response) at 2.

The examiner did not accept Citrix's arguments, once again rejecting the claims of the

'954 Patent under section 101, finding that the claims "can encompass a scope void of any

hardware."  Ex. E ('954 file history, 6/9/2009 Office Action) at 2.  Citrix again argued that its

claims were eligible because they explicitly recite a "machine."  Ex. F ('954 file history, 9/9/2009

Response) at 2.  Under the law at the time, this argument overcame the section 101 rejection.  As

discussed below, the Supreme Court has since held explicitly that mere recitation of a generic

machine in the claims does not render otherwise abstract claims eligible for patentability.  Thus,

under today's law, the claims never would have been allowed.

## IV.    LEGAL STANDARDS

### A.    Motion to Dismiss

"Federal Rule of Civil Procedure 12(b)(6) provides for dismissal where the plaintiff 'fails

to state a claim upon which relief can be granted.'"  *Everglades Game Techs., LLC v. Supercell,*

*Inc.*, C.A. No. 14-643-GMS, 2015 WL 4999654, at *2 (D. Del. Aug. 21, 2015) (quoting Fed. R.

Civ. P. 12(b)(6)).  Since patent eligibility is a "threshold issue," courts regularly resolve this at

the motion to dismiss stage.  *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1365 (Fed.

Cir. 2015) (quotation marks omitted) (Mayer, J., concurring); *Sound View Innovations, LLC v.*

*Facebook, Inc.*, 204 F. Supp. 3d 655, 660 (D. Del. 2016).  Section 101 determinations under Rule

12(b)(6) "spare both litigants and courts years of needless litigation."  *I/P Engine, Inc. v. AOL,*

*Inc.*, 576 F. App'x 982, 996 (Fed. Cir. 2014) (non-precedential) (Mayer, J., concurring).

Resolution of patent-eligibility on pretrial motion is appropriate unless the complaint adequately

alleges a factual issue as to whether the claimed methods and systems improve the function and

operation of computers themselves, rather than simply implementing the abstract idea in a

conventional or routine way. *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d

1121, 1126-27 (Fed. Cir. 2018); *Berkheimer v. HP Inc.,* 881 F.3d 1360, 1368-69 (Fed. Cir. 2018).

      B.      **35 U.S.C. § 101**

Section 101 of the Patent Act requires that a patent disclose a "new and useful process,

machine, manufacture, or composition of matter, or any new and useful improvement thereof."

35 U.S.C. § 101.  The Supreme Court has carved out three areas that are ineligible for patent

protection:  "laws of nature, physical phenomena, and abstract ideas." *Diamond v. Chakrabarty*,

447 U.S. 303, 309 (1980).  These basic tools of scientific and technological work are "free to all

men and reserved exclusively to none." *Funk Bros. Seed Co. v. Kalo Inoculant Co.*, 333 U.S.

127, 130 (1948).  This rule of law reflects the basic concern that allowing a patentee to preempt

use of these basic tools would "tend to impede innovation more than it would tend to promote it."

*Mayo Collaborative Servs. v. Prometheus Labs.*, 566 U.S. 66, 71 (2012).

Prior to the Supreme Court's *Alice* ruling in 2014, the Federal Circuit had ruled that

software and business-method patents could be eligible if they were tied to a tangible medium,

including a computer. *See, e.g., In re Comiskey*, 499 F. 3d 1365 (Fed. Cir. 2007).  In *Alice*, the

Supreme Court applied the two-part test established in *Mayo* to determine whether claim is

ineligible as being abstract under Section 101.  The <u>first</u> step is to "determine whether the claims

at issue are directed to one of those patent-ineligible concepts," namely, laws of nature, natural

phenomena, and abstract ideas. *Alice*, 134 S. Ct. at 2354-55.  If so, then the <u>second</u> step is to

examine whether the claims are limited by an "inventive concept" such that "the patent in

practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Id.* at

2355 (quotation marks omitted).  "Simply appending conventional steps, specified at a high level

of generality," implementing an idea on a "general-purpose digital computer" or "limiting the use

of an abstract idea 'to a particular technological environment'" is not enough.  *Id.* at 2357-58

(quoting *Bilski v. Kappos*, 561 U.S. 593, 610-11 (2010) (internal citations omitted)).

In assessing whether a claimed invention is abstract, "the claims are considered in their

entirety to ascertain whether their character as a whole is directed to excluded subject matter."

*Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015).  Claims that

merely take existing information and manipulate it or reorganize it do not pass muster.  *See, e.g.,*

*Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*, 758 F.3d 1344, 1351 (Fed. Cir. 2014);

*Cybersource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1375 (Fed. Cir. 2011); *RecogniCorp,*

*LLC v. Nintendo Co.*, 855 F.3d 1322, 1326-1327 (Fed. Cir. 2017).  In addition, whether the

claims that are functional in nature, rather than directed to a concrete, specific way of

implementing the abstract idea, are abstract.  *See Clarilogic, Inc. v. FormFree Holdings Corp.*,

681 F. App'x. 950, 954 (Fed. Cir. 2017).

## V.     THE ASSERTED CLAIMS ARE INELIGIBLE

The Asserted Claims recite the ineligible abstract idea of determining whether a service is

available based on whether the response time exceeds an average response time by more than a

certain amount.[6]  This idea can easily be performed by a person using pencil and paper.  The

claims also do not contain a concrete, inventive concept sufficient to transform the abstract idea

into a patent-eligible invention.  Under a straightforward application of the Supreme Court's

*Alice* framework, the claims are ineligible for patent protection.

---

[6] It is appropriate to assess patent eligibility under Rule 12(b)(6) using the constructions most
favorable to the patent owner.  See *Content Extraction & Transmission LLC v. Wells Fargo
Bank, NA*, 776 F.3d 1343, 1349 (Fed. Cir. 2014).  For this motion, no claim construction is
necessary to assess the eligibility of the claims, because even if the claims are construed they
would still not amount to "significantly more than the abstract idea" discussed herein.  *Id.*; *see
also Procter & Gamble Co. v. Quantificare Inc.*, 288 F. Supp. 3d 1002, 1024 (N.D. Cal. 2017).

### A.    The Asserted Claims are Directed to an Abstract Idea

#### 1.    *The Claims Recite Determining Service Availability Based on Deviation from an Average Response Time*

The Asserted Claims recite the following steps: (1) determining response time;

(2) calculating average response time; (3) establishing a predetermined deviation threshold; and

(4) determining availability based on whether response time deviation exceeds the average

response time by more than the threshold.  The claims do not require a specific way to make

these determinations.  Rather, they require only that those steps are accomplished in some way.

Such claims are ineligible.  *See Intellectual Ventures I*

*LLC v. Symantec Corp.*, 234 F. Supp. 3d 601, 607 (D.

Del. 2017) (finding ineligible claims that "do not

provide any concrete details that limit the claimed

invention to a specific solution" and that "simply rely

on functional language"); *see also Affinity Labs of*

*Texas, LLC v. Amazon.com, Inc.*, 838 F.3d 1266, 1263

(Fed. Cir. 2016); *In re TLI Commc'ns. LLC Patent*

*Litig.*, 823 F.3d 607, 612-13 (Fed. Cir. 2016).  Even the

specification merely describes these steps generally with reference to a flow



*Fig. 5*

chart (Figure 5) that just parrots the language of the claims, as shown above.  *See, e.g.,* Ex. A

('954 Patent) at 28:66-32:16.

The claims reflect what the patents say is the sole improvement over the prior art.  In

particular, the Background of the Invention acknowledges that the alleged invention was simply

using a variable response timeout rather than a static timeout to determine service availability in

computer networks:

> Conventional systems provide functionality for determining responsiveness of servers to network requests.  Typically, static response times are defined by an administrator.  If a server fails to respond to a request within the allocated response time, the server may be identified as an unavailable server . . . .  A system supporting a variable response time and  providing accurate identification of the availability of one of a plurality of network services or servers having varying average response times would be desirable.

Ex. A ('954 Patent) at 1:15-38.  Thus, all that the claims purport to add to the art is using a variable response time (based on deviation from the average response time) rather than a static response time.

A simple example illustrates the abstract nature of this idea.  In a "conventional" system as described by the patents, a system might be configured to indicate a server is unavailable if it does not respond within ten seconds.  This would be a "static" response time used to determine unavailability.  The patents merely suggest that rather than using a static response time, the response time should depend on the average response time for a particular service.  Such a system might be configured to indicate a service or server is unavailable if it does not respond within five seconds longer than the average response time for that server or service.  That would be an example of a "variable" or "dynamic" response time used to determine unavailability.

The abstract idea of determining service availability based on a deviation from an average response time captures the "character as a whole" of the claims.  *Internet Patents Corp.,* 790 F.3d at 1346.  As graphically depicted in the discussion of the claims above, each of the claims recites the same basic four steps of (1) determining response time, (2) calculating average response time, (3) establishing a deviation threshold, and (4) determining whether the response time exceeds the average by more than the deviation threshold.  These steps merely capture the abstract idea the patents describe, and nothing more.

## 2.  *The Claims Can Be Performed Entirely in the Human Mind*

The abstractness of the Asserted Claims is confirmed by the fact that they claim an idea

that can be "performed entirely in the human mind." *Data Engine Techs. LLC v. Google Inc.*, 211 F. Supp. 3d 669, 679 (D. Del. 2016).[7]  As this Court has held, "[a]nother helpful way of assessing whether the claims of the patent are directed to an abstract idea is to consider if all the steps of the claim could be performed by human beings in a non-computerized 'brick and mortar' context." *Intellectual Ventures I*, 100 F. Supp. 3d at 383 (citing *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1353 (Fed. Cir. 2014)).  Those "methods which can be performed ***entirely*** in the human mind are the types of methods that embody the 'basic tools of scientific and technological work' that are free to all men and reserved exclusively to none." *Data Engine Techs.*, 211 F. Supp. 3d at 679 (quoting *Cybersource*, 654 F.3d at 1373 (emphasis in original)); *see also Coffelt v. NVIDIA Corp.*, 680 F. App'x. 1010, 1010-11 (Fed. Cir. 2017).

In this case, determining availability by comparing response time to an average response time (and deviation therefrom) is something people regularly do in everyday life outside the context of computer networks—and have done forever.  It is a basic tool in the "storehouse of knowledge" that is "free to all . . . and reserved exclusively to none." *Bilski*, 561 U.S. at 602.  A simple analogy is placing a phone call.  If, for example, a woman calls her brother's office, but her brother does not pick up right away, she may conclude, after the phone rings four times (and even before voicemail picks up), that her brother is not available.  This is based on her knowledge, from previous calls, that her brother picks up the phone after two rings on average. In contrast, if the same woman calls her grandfather, she may allow the phone to ring seven times before concluding that he is unavailable.  This is based on her knowledge, from previous calls, that her grandfather answers the phone after five rings on average.  In both cases, she concludes

---

[7] The Federal Circuit has often found claims ineligible even without considering the "human mind" test.  *See, e.g., Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 788 F.3d 1371 (Fed. Cir. 2015).

that the person she is calling is unavailable because the phone rings twice more than the average response time.

In another example, a child might regularly walk home from school, taking an average of ten minutes.  A worried parent might conclude something is wrong if the child has not arrived after 20 minutes.  On the other hand, the child might take an average of 30 minutes to walk home from a friend's house. In that case, the parent might conclude something is wrong if the child has not arrived after 40 minutes.  In both cases, the parent concludes that something is wrong if the child takes ten minutes longer than average for the particular trip.  This idea of judging availability based on deviation from average response time is precisely what is claimed in the Asserted Claims, and it is as abstract a human function as there is.

It does not matter that the patents claim this abstract idea in a particular technological context (*i.e.* computer network services).  The Supreme Court made clear in *Alice* that merely performing an abstract idea in a technological environment does not make the idea any less abstract.  *See Alice*, 134 S. Ct. at 2358 (*citing Parker v. Flook*, 437 U.S. 584, 585-86 (1978)).  In addition, the Asserted Claims recite only generic components described in functional terms as mere tools to perform the idea.  *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1355-56 (Fed. Cir. 2016) (claims reciting "result-focused, functional" terms without "any assertedly inventive programming" or "particular ways of achieving" the goals are ineligible).

The Federal Circuit and district courts have consistently rejected claims reciting abstract ideas that merely collect information and make determinations that a human could make.  *See, e.g., FairWarning IP, LLC v. Iatric Systems, Inc.*, 839 F.3d 1089, 1093 (Fed. Cir. 2016) (finding ineligible claims directed to collecting information about patient access to information, and analyzing the information to determine whether improper access has occurred); *Elec. Power*

*Grp.*, 830 F.3d at 1351-52 (finding ineligible claims that recited gathering data and detecting and analyzing events in real-time); *OIP Technologies*, 788 F.3d at 1361 (finding ineligible claims reciting gathering statistics about how customers responded to the offers and automatically determining outcomes for the offers); *Orostream LLC v. ABS-CBN Int'l*, C.A. No. 2:15-cv-248-JRG, 2015 WL 5836949 (E.D. Tex. Oct. 1, 2015) (finding ineligible claims to monitoring the amount of time packets take to transmit, and adjusting transfer rates accordingly); *Two-Way Media Ltd. v. Comcast Cable Commc'ns., LLC*, C.A. No. 14-1006-RGA., 2016 WL 4373698 (D. Del. Aug. 15, 2016) (finding ineligible claims directed at monitoring delivery of packets on a communications network); *Comcast IP Holdings I, LLC v. Sprint Commc'ns. Co. L.P.*, 55 F. Supp. 3d 544, 548-49 (D. Del. 2014) (finding ineligible claims directed at receiving a request and determining whether the request requires a user prompt in the context of a telephone network). The court should find that the Asserted Claims are also abstract.

B.    **The Asserted Claims Do Not Contain an Inventive Concept**

When, as in this case, the claims are directed only to an abstract idea, in step two of the *Alice* test, the Court must determine whether there is some "inventive concept" beyond the abstract idea. Courts must "consider the elements of each claim both individually and as an ordered combination to determine whether the additional elements transform the nature of the claim into a patent-eligible application." *Alice*, 134 S. Ct. at 2355 (quotation marks omitted).

Here, evaluating the claimed elements either individually or as an ordered combination leads to the conclusion that they cover no more than the routine abstract idea of determining availability by comparing response time to an average response time. Although the patent purports to have met a need in the art, the claims recite nothing inventive to achieve the abstract idea; rather, they claim using generic, conventional computer components to execute the abstract idea in an intended environment. Because the patent itself admits that the claimed components

15

for implementing the abstract idea are conventional (*see, e.g.*, Ex. A ('954 Patent) at 1:15-16 and 26:36-41), there is no factual dispute that could preclude dismissal at this stage.  Indeed, in its recent decision denying a petition for rehearing *en banc* in *Berkheimer* and *Aatrix*, the Federal Circuit noted that where, as in this case, "the specification admits the additional claim elements are well-understood, routine, and conventional, it will be difficult, if not impossible, for a patentee to show a genuine dispute."  *Berkheimer v. HP Inc.*, --F.3d--, 2018 WL 2437140, at *2 (Fed. Cir. May 31, 2018).

### 1.  *The "Monitor," "Probe," and "Device" Limitations Do Not Provide an Inventive Concept*

While the claims are directed at "an appliance" or a "system," they recite only generic elements such as "a monitor," "one or more probes," a "device intermediary to a plurality of clients and a plurality of services," and "one or more monitors of a device intermediary to a plurality of clients and a plurality of services."  Nothing more specific is claimed with respect to these components, nor does the specification describe the system as anything other than generic, as illustrated in the "block diagram" of Figure 4.  *See, e.g.,* Ex. A ('954 Patent) at 3:27-29 ("FIG. 4 is a block diagram depicting one embodiment of an appliance using a dynamic response time to determine responsiveness of one or more network services on a server").[8]

The Supreme Court in *Alice* expressly rejected the idea that performing an abstract idea using generic devices confers patentability.  *Alice*, 134 S. Ct. at 2358 ("[T]he mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible

---

[8] While columns 4-26 of the specification describe various devices with some specificity, that description is nothing more than an overview of "the network and computing environments in which [the claimed invention] may be deployed."  *See* Ex. A ('954 Patent) at 4:12-15.  Indeed, that portion of the specification is nothing more than a description of known, conventional networking elements; the "detailed" description of the claimed invention does not begin until column 26, line 26, which describes the invention generically and functionally.

invention."); *see also Gammino v. Am. Tel. & Tel. Co.*, 127 F. Supp. 3d 264, 273 (D. Del. 2015)
(noting that "[t]he Supreme Court and Federal Circuit have held that there is no 'inventive
concept' if a claim recites an abstract idea implemented using 'generic' technology."). In *Alice*,
the claims recited hardware such as a "data processing system" with a "communications
controller" and "data storage unit." 134 S. Ct. at 2360. The Court held that these recitations
were insufficient to impart an inventive concept because they are "purely functional and generic,"
noting that "[n]early every computer will include a "communications controller" and "data
storage unit" capable of performing the basic calculation, storage, and transmission functions
required by the method claims." *Id.*

     After *Alice*, the Federal Circuit and this Court have routinely held that the recitation of
generic and conventional computer components, such as those recited in the Asserted Claims, are
insufficient to provide an inventive concept. For example, in *Content Extraction and
Transmission*, the Federal Circuit found that no inventive concept was imparted by claims that
included recitations that required the use of generic components such as "an automated digitizing
unit" and "a memory." 776 F.3d at 1348. The court held that those recitations simply recited the
use of existing technology "to perform well-understood, routine, and conventional activities
commonly used in the industry." *Id.*; *see also, e.g., Automated Tracking Sols., LLC v. Coca-
Cola Co.*, --F. App'x --, 2018 WL 935455, at *5 (Fed. Cir. Feb. 16, 2018) (claims recited using a
"transponder," a "reader," a "processor," and a "storage device"); *Intellectual Ventures I*, 838
F.3d at 1318 (claims recited "a database," "a rule engine," and "a distribution mechanism"); *Nice
Systems Ltd. v. Clickfox, Inc.*, 207 F. Supp. 3d 393, 401-02 (D. Del. 2016) (claims recited a "web
analyzer using a processor"); *Cloud Satchel, LLC v. Amazon.com, Inc.*, 76 F.Supp.3d 553, 563-64
(D. Del. 2014) (claims recited "portable electronic document reference transport device,"

"electronic document reference," and "distributed document subsystem").

## 2.   *The Patent Office Twice Rejected the Claims as Ineligible*

As discussed above, the Patent Office already concluded that the claims are ineligible, but the rejections were overcome based on the then-existing law, which the Supreme Court has since changed.  The Examiner twice rejected the claims under Section 101.  *See* Ex. C ('954 file history, 11/28/2008 Office Action) at 2; Ex. E ('954 file history, 6/9/2009 Office Action) at 2.  To overcome the rejections, Citrix argued that the claims were patent-eligible because they are tied to a generic device.  Ex. D ('954 file history, 2/27/2009 Response) at 2; Ex. F ('954 file history, 9/9/2009 Response) at 2.  The Examiner ultimately allowed the claims of the '954 Patent because, at the time of the rejections the governing law of Section 101 eligibility was the "machine-or-transformation" test, under which a patent claim was eligible if is tied to a particular machine or apparatus.  *See In re Bilski*, 545 F.3d 943, 954 (Fed. Cir. 2008) (*en banc*).

The law changed since Citrix overcame these rejections, however.  First, after Citrix overcame the rejections, the Supreme Court did away with the machine-or-transformation test as the sole test of eligibility.  *Bilski*, 561 U.S. at 3224.  Then in *Alice*, decided in 2014, the Supreme Court unequivocally declared that the inclusion of a generic computing device *cannot* render an otherwise abstract idea eligible, holding that the "introduction of a computer into the claims does not alter the analysis."  134 S. Ct. at 2357.  Thus, while the claims here may be implemented on a "machine" (*i.e.*, they require an "appliance," a "monitor," "probes," or a "device"), the recited components are nothing more than generic, conventional computer devices used to perform the abstract idea, and their inclusion in the claims does not make the claims any less abstract—or any more eligible for patentability.  *See, e.g., buySAFE, Inc.*, 765 F.3d at 1354-55 (claims were directed at an abstract idea despite the presence of computer-based limitations); *Accenture Glob. Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1344 (Fed. Cir. 2013) (same); *DDR*

*Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1256 (Fed. Cir. 2014) (same).  Thus, the claims were allowed over the section 101 rejection only under then-existing law, which has now been replaced.  Under current law, the presence of generic hardware in the claims does not provide an inventive concept.

### 3.   The "Protocol" Limitations Do Not Provide an Inventive Concept

Some of the claims recite determining response times for a specific communication "protocol."  There is nothing inventive about these recitations—such protocols were well-known conventional protocols used in networking environment, and are thus insufficient to transform the abstract idea into patent eligible subject matter.  *See Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 716 (Fed. Cir. 2014) ("Adding routine additional steps such as . . . use of the Internet does not transform an otherwise abstract idea into patent-eligible subject matter."); *BuySafe, Inc.*, 765 F.3d at 1355 ("That a computer receives and sends the information over a network—with no further specification—is not even arguably inventive.").  The specification references many known communication protocols and in no way suggests that using those various protocols (or using them with the claims) is novel.  *See, e.g.,* Ex. A ('954 Patent) at 8:15-23; 15:16-43.  As such, the protocol limitations do not confer patent-eligibility to the claims.

### 4.   The Intended Environment Does Not Provide an Inventive Concept

The fact that the claimed method or system may be intended to "determine responsiveness of one or more network services" is also insufficient to transform the idea into eligible subject matter.  Indeed, such a statement merely restates the express goal of the patents and is just a "field of use," which cannot confer patentability.  *See Bilski*, 561 U.S. at 3230 ("the prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of the formula to a particular technological environment") (quoting *Diamond v. Diehr*, 450 U.S. 175, 191 (1981)); *Comcast IP Holdings I*, 55 F. Supp. 3d at 549-50.

*5.   The "Ordered Combination" Does Not Provide an Inventive Concept*

Finally, the Court must determine whether viewing the claim as an ordered combination "transform[s] the nature of the claim" into patent-eligible subject matter.  *Alice*, 134 S. Ct. at 2355 (quotation marks omitted).  In *Bascom Glob. Internet Services*, *Inc. v. AT&T Mobility LLC*, the Federal Circuit required the district court to consider whether "an inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces." 827 F.3d 1341, 1350 (Fed. Cir. 2016).  The claims here do not—they "add nothing… that is not already present when the steps are considered separately."  *Alice*, 134 S. Ct. at 2359 (alteration and quotation marks omitted).  As shown above, each of the individual elements that Citrix may purport to rely on is known and conventional, and the ordered combination does nothing more than implement the abstract idea of determining availability by comparing response time to an average response time in a known and conventional manner.  Indeed, if someone is trying to determine availability based on deviation from an average response time (*e.g.*, to determine if someone they are calling is available to talk), they would have to perform the steps of calculating an average, determining an acceptable deviation, and comparing the response time to the average response time to determine if it deviates from the average by more than the deviation.

VI.    **CONCLUSION**

For the foregoing reasons, the Asserted Claims satisfy the Supreme Court's two-part *Alice* test for ineligibility, and thus the Court should find them ineligible under 35 U.S.C. § 101.

20

Respectfully submitted,

OF COUNSEL:

POTTER ANDERSON & CORROON LLP

Josh Krevitt
Brian A. Rosenthal
GIBSON DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Tel:  (212) 351-4000

By:    */s/ Bindu A. Palapura*
    David E. Moore (#3983)
    Bindu A. Palapura (#5370)
    Stephanie E. O'Byrne (#4446)
    Hercules Plaza, 6th Floor
    1313 N. Market Street
    Wilmington, DE  19801
    Tel:  (302) 984-6000
    dmoore@potteranderson.com
    bpalapura@potteranderson.com
    sobyrne@potteranderson.com

Y. Ernest Hsin
GIBSON DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Tel:  (415) 393-8200

*Attorneys for Defendant Avi Networks, Inc.*

Brian K. Andrea
GIBSON DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC  20036-5306
Tel:  (202) 955-8500

Dated:  June 6, 2018
5831189 / 45081